Ark. Power & Light Co. *v.* Scroggins.

5-1820                                   328 S. W. 2d 97

Opinion Delivered October 5, 1959.

[Rehearing denied November 9, 1959]

*Gordon & Gordon* and *House, Holmes, Butler & Jewell,* for appellant.

*Williams & Gardner,* for appellee.

George Rose Smith, J. Doyle Scroggins filed a claim for disability benefits under the workmen's compensation law. The commission denied the claim upon a finding that Scroggins' disability was not the result of an accidental injury arising out of and in the course of his employment. Scroggins died on February 25, 1957, which was after the proof had been completed, and his widow took an appeal from the commission's decision. The circuit court reversed the decision on the ground that there is no substantial evidence to support the denial of an award, and that is the only issue on this appeal.

There is really very little dispute about the facts. Scroggins had worked for the appellant for about ten years as a general handy man and helper, doing various odd jobs of a physical nature. On the night of November 9, 1955, Scroggins, while sitting in a Morrilton pool hall, suffered what was later known to have been a heart

attack. By stopping to rest on the way Scroggins was able to walk home, where his wife called a doctor. Dr. Mobley diagnosed the condition as indigestion and treated it accordingly. On the witness stand Dr. Mobley frankly admitted that he had been mistaken and that Scroggins had suffered a coronary infarct.

The attack in the pool hall occurred on a Wednesday night. Scroggins did not go to work during the rest of the week, but by Sunday he felt better, and he returned to his job on Monday, November 14. He was put to work pulling up grass with his hands, but he found that the work caused pain in his chest. He had to rest twice during the morning and perhaps several times during the afternoon. Both he and his fellow worker, Clarence Fuller, testified that Scroggins worked some during the afternoon, but not much. The referee stated that "there was no evidence and no tender of evidence that the claimant collapsed on the job," and that view is amply supported by the record unless the word collapse is to be given a definition quite different from its real meaning.

That night, November 14, Scroggins continued to have pain, which he described as "absolutely the same" and in the same place as that suffered the preceding Wednesday. Dr. Mobley was out of town, and his associate, Dr. Hyder, was called. In the course of Dr. Hyder's examination the existence of heart disease was suspected for the first time. This diagnosis was definitely confirmed by an electrocardiogram the next day, and Scroggins was at once put in a hospital for two weeks of complete bed rest. He was then allowed to be up and about, but he was not permitted to return to work and was cautioned against strenuous exertion. The appellant paid Scroggins his regular salary as long as the doctors had any hope that he might recover and be able to resume his job; but finally, in July of 1956, Dr. Warden informed the appellant that Scroggins would not be able to return to his arduous duties. Scroggins' employment was then terminated, and the present claim for disability was filed a month or so later. Although Scroggins died while the case was pending this appeal

relates only to the claim for disability and does not involve death benefits.

In reversing the commission the circuit judge relied upon the rule adopted in *Bryant Stave & Heading Co.* v. *White,* 227 Ark. 147, 296 S. W. 2d 436. There we held that an injury may be accidental even though it results from the performance of the employee's ordinary duties, without any unusual exertion or strain. But, in pointing out that there still must be a causal relation between the work and the injury, we went on to say: ". . . an accidental injury arises out of the employment when the required exertion producing the injury is too great for the person undertaking the work, whatever the degree of exertion or the condition of his health, *provided the exertion is either the sole or a contributing cause of the injury."* (Italics added.)

The decisive question is whether there is any substantial evidence to support the commission's view that Scroggins' work did not cause or contribute to his disability. Unless the undisputed proof, viewed in the light most favorable to the commission's findings, establishes a causal connection between the work and the injury we must uphold the commission's action.

It is shown by practically uncontradicted testimony that Scroggins' employment did not cause the original heart attack of November 9. Dr. Hyder testified that a coronary infarct does not come about abruptly; it results from disease and develops over a period of time. "There is some pathology there prior to the time they have that attack." During weeks, months, or years a series of events takes place within the heart and ultimately results in a coronary occlusion or infarction. Dr. Hardeman expressed a similar opinion, referring to the claimant's heart condition as a disease process rather than as the consequence of an injury. It is shown that the eventual attack may occur at any time, even while the person is at rest or asleep. Here Scroggins' seizure occurred while he was sitting quietly in a poolroom, watching others play dominoes.

In the absence of proof that Scroggins' work brought about the first attack the claim must rest solely upon the theory that Scroggins' attempts to pull grass on Monday, November 14, either caused a disability that would not otherwise have existed or contributed to a disability by hastening its onset or heightening its severity. We are of the opinion that this contention presents a disputed question of fact, upon which the commission's findings are final.

The commission was justified in believing that when this employee went to his job on the Monday in question he was already suffering from a disease that had developed during a long period of time, and his heart had already been damaged by the occlusion five days earlier. No witness, either medical or lay, undertakes to say that any lasting ill effects results from this workman's physical efforts that Monday—efforts that he repeatedly discontinued when the chest pain became severe. If an inference of permanent harm can be drawn from the testimony, there is in this record no obstacle preventing the commission from reaching the opposite conclusion, that the consequences of Scroggins' exertions that day were temporary and did not in the long run make his condition any worse than it already was.

It is not clear from the evidence whether Scroggins suffered a second and independent heart attack in his home on the night of November 14 or merely suffered pain which was, as the commission found, a continuation of the original attack of November 9. If every doubt in this respect is resolved in favor of the claimant the most that can be said is that Scroggins' work that day caused him to suffer that night an attack that was certainly no worse than the first seizure. Granted these facts, there is still a burden on the claimant to prove that the second attack was, as we said in the *Bryant* case, *supra,* either the sole cause of the disability or a contributing cause of it. It is on this point that the appellee's attempt to overturn the findings of the commission must fail. The record falls decidedly short of demonstrating by undisputed proof that the claimant's inability to work was

caused or contributed to by his attempts to work on November 14. To the contrary, Dr. Hardeman's positive statement affirmatively supports the commission's decision: "It is my opinion, from what I know of the revealed details of this case, that the condition was due to disease and not to injury, neither directly nor by aggravation."

Our sympathies are naturally with the workman and his dependents, but this does not justify our imposing liability upon the employer in a case of this kind. The commission viewed this claim as that of a diseased employee whose efforts to remain at his job, though unsuccessful, had no substantial adverse effect upon a pre-existing disability having no connection with his employment. If compensation must be awarded in this case the same result would necessarily follow whenever a workman afflicted with heart disease, arthritis, asthma, epilepsy, or any other malady found that his attempts to stay at his job caused a recurrence of his symptoms, even though his condition thereby became no worse than before. Argument is not needed to show that the situation we have just described does not satisfy the statutory requirement of an accidental injury arising in the course of the employment.

Reversed.

McFADDIN, WARD, and JOHNSON, JJ., dissent.

JIM JOHNSON, Associate Justice, dissenting.

We of the minority greatly fear that the majority opinion in this case will be considered by the legal profession to be a turning away from the wise and salutary ruling adopted by this court in *Bryant Stave & Heading Co.* v. *White,* 227 Ark. 147, 296 S. W. 2d 436. This opinion by Mr. Justice Millwee is a landmark opinion in workmen's compensation cases. It has been consistently followed by this Court and emphasized in many cases, particularly in the case of *Bettendorf & Co.* v. *Kelly,* 229 Ark. 672, 317 S. W. 2d 708.

The learned Circuit Judge in the case at bar was thoroughly familiar with the *Bryant Stave Company*

case as is shown by his masterful opinion which reflects that he carefully studied the transcript in the instant case and wrote an opinion which states exactly how we of the minority feel. The Circuit Judge's opinion is long but it is thorough, complete and as we see it unanswerable. We give it below and adopt it as our dissenting opinion in the case at bar.

"Doyle Scroggin, as an employee of the respondent, Arkansas Power & Light Company, filed a claim for disability benefits, allegedly due as the result of an accidental injury sustained during the course of his employment on November 14, 1955, allegedly totally disabling him within the provisions of the Workmen's Compensation Act. Upon a hearing had before the Referee, an opinion was filed subsequently on February 11, 1957, finding and holding that the alleged disability of Claimant, was not the result of accidental injury. Appeal from such finding was had to the Full Commission, and on June 14, 1957, the findings of the Referee was sustained and confirmed by an Opinion of such date. From such findings and Opinion, Mrs. Emma Louise Scroggins, widow of Doyle Scroggins, who died on February 25, 1957, during the pending of the proceedings, appealed from the Opinion rendered June 14, 1957, denying the claim, to the Circuit Court of Conway County, Arkansas.

"A careful examination and reading of the record of the evidence and exhibits, reflects that Doyle Scroggins had been regularly employed as a "helper" during the last past ten years preceding his death and disability. His employment involved rendering assistance to the linemen as well as that of a general laborer. He was not a lineman, did not as a rule, climb poles. His general work included any ground job, such as digging holes, working on concrete ground installation, pulling grass and similar work as directed by his superiors.

"On November 14, 1955, Scroggins was engaged in work preparatory to the pouring of concrete at a sub-station. As a part of his duties he was directed to pull grass from an area and section of the sub-station, where

it was intended to pour concrete. The only way the grass could be removed was by direct pulling, rather than by cutting with a hoe. About 9:00 a.m. on such date, Scroggins became ill. Complained of pain in chest. Stopped work for a short interval and with Fuller, purchased a 'coke'. Rested and pain left him. Continued to work on but pain hit him a third time. Went to lunch and returned to work about 1:30 or 2:00 o'clock p.m. Pain returned in chest area. He drank a 7-Up, thinking he had indigestion.

"On the night of November 14, 1955, the pain continuing, Mr. Scroggins attempted to contact Dr. H. E. Mobley. Dr. Mobley not being available, Dr. H. E. Hyder of the medical firm, answered the call and upon examination diagnosed the condition as occurring from a heart attack. On November 15, 1955, Mr. Scroggins went to the Mobley Clinic and his condition diagnosed as the result of a heart attack. At the direction of the Respondent and within a short time, Scroggins went to Little Rock where he was examined by Dr. Daniel R. Hardeman and also by Dr. J. R. Warden at different intervals. From the examinations and electrocardiograms it was the opinion of the examining physicians that Mr. Scroggins was suffering from a myocardial infarction which for the time being would wholly incapacitate him from his former work.

"Preceding the attack of November 14, 1955, and on the night of November 9, 1955, Mr. Scroggins became ill with what he thought was an attack of indigestion. Dr. Mobley was called and treated him for what was thought an attack of indigestion. Later, and after the attack of November 14, 1955, Dr. Mobley testified that he was mistaken as to the first diagnosis of indigestion as of November 9th, and that the attack at that date, was in fact a heart attack. Mr. Scroggins laid off work from the 10th of November to the 14th of November 1955, when he sustained the second heart attack.

"Since the claim for disability benefits was predicated upon a disabling heart attack occurring at a time

when Mr. Scroggins was engaged in the course of his employment, the pertinent and material parts of the evidence are referred to in brief as follows:

"Tr. of Testimony, P. 25.

" 'Q. Doyle, the work you did on the 14th of November, how did it compare with the physical exertion necessary to do your normal duties?'

" 'A. . . . the only difference in it you were stooping over in this particular spot jerking out the Bermuda grass, like jerking out eye teeth, by jacks, and I hadn't ordinarily been doing that . . . and the barbed wire pulling, you put your foot, on the pole and stretch every gut in your body, and stretching that wire.'

" 'Q. Did you stretch any wire that morning?'

" 'A. No, not that day.' "

"Tr. of Testimony, P. 27.

" 'Q. If it came to a job of pulling grass—that was your job?'

" 'A. Normally, yes.' "

"At pages 8 and 9 of the Transcript of Testimony, Doyle Scroggins described the nature and character of the work he was performing on the morning of November 14th. That in the area where the transformers were set, grass had grown which could not be mown. That it was necessary that he reach down and pull up the grass. That he got sick, his chest was killing him and that he so advised Fuller, who was working with him.

"Clarence Fuller, Tr. of Test. p. 59, described the type of work being performed by Doyle Scroggins and confirmed Scroggins' statement as to pulling of grass. That Doyle complained of being sick, even more in the afternoon. Tr. or Test. p. 60, That in the afternoon Scroggins didn't work much.

"Elmer Kyle testified as to the attack, or illness of November 9, 1955. That pulling grass was a part of the general duties of a helper such as Scroggins was.

"Tr. of Test. p. 93, Arthur Riggs testified that he worked with Scroggins on November 9, collecting and reading meters. No particular strain as to type of work done that day.

"From the evidence, there apparently was some conflict as to who Scroggins was actually working with on November 9th, which the Court feels is not particularly material. As the Court views the apparent discrepancy, all the witnesses testified to the best of their memory and truthfully.

"At page 58 of the Transcript of Testimony, Dr. Mobley testified:

" 'Doyle had a coronary attack and what the specific cause was I do not know.' "

"At page 53 of the Transcript of Testimony he was asked:

" 'Q. Will you — does — is that type of an attack that develops suddenly?' "

" 'A. Yes, sir.' "

"At page 53 of the Tr. of Test., Dr. Mobley described in detail an infarction and at page 56 stated:

" 'Once they have a damaged heart, then the conservative method of living and protecting that heart is essential if that individual wants to go on and live a normal life.' "

"Dr. H. E. Hyder testified, page 75, Tr. of Test.

" 'Well, from my knowledge of medicine these things just don't happen abruptly. They have been developing over a period of time.' "

"Then Dr. Hyder was asked this question:

" 'Q. Well, I didn't ask you if it caused it, would it (work) have contributed to the bringing about of this attack, maybe earlier than it would otherwise have occurred?' "

"'A. If there was any undue exertion it could have; an awkward position, straining, pulling.'"

"At page 77 in the Tr. of Test. on cross-examination Dr. Hyder was asked:

"'Q. Now Doyle was pulling grass that morning, but if he had been digging a hole, the exertion of digging a hole might have been just as much a contributing factor if there was such a thing, to this infarct, could it not?"

"'A. Yes, sir.'"

"Page 77 continued:

"'Q. Or any other ordinary duties?'"

"'A. That's right.'"

"'Q. So, actually, the condition is there, Doctor, and it could have possibly occurred under any set of circumstances, anytime, night or day, with that pathology?'

"'A. It could have.'"

"At page 101 of the Transcript of Testimony, George Price, Local Manager of Arkansas Power & Light Company testified that Scroggins was classified as helper. He described the duties of a helper as follows:

"'. . . The helper assists the journeymen servicemen. He is also called on to read meters, to collect, to mow the grass at the sub-stations, to clean up around the pole yards, to help build any kind of forms or to paint or do any type of tasks that are required in our office . . . they are to keep the grass cut and keep it clean around the platforms . . . they either use a cutter blade or a hoe or pull it up (grass) by hand . . .'"

"'Q. Was there anything unusual that day in the nature of his duties?'"

"'A. No, sir.'"

"In Exhibit designated 'Rx 9' Page 127 of the Transcript of Testimony, same being a letter by way of medical report dated December 4, 1956, addressed to Mr.

Thos. C. Trimble, by Dr. Daniel R. Hardeman, among other things is the statement:

" 'It is my opinion, from what I know of the revealed details of this case, that the condition was due to disease and not to injury, neither directly or by aggravation.' "

"Also,

" 'It is further my opinion that this man's case points to a building up of coronary disease in his past history of digestive upsets which in the light of events I believe were of coronary and no digestive origin.' "

"Dr. Hardeman continued to discuss the case history of Mr. Scroggins, the type of work followed, referring to the origin and progress of the heart disease and condition, the purport of which was to the effect that the work performed did not of itself initiate or cause the heart condition.

"Dr. J. R. Warden, in Exhibit CX 2, confirms the diagnosis and opinions voiced by Dr. Hardeman as to the nature and extent of the heart damage and condition of Doyle Scroggins. He stated in his letter addressed to the Personnel Division, Arkansas Power & Light Company, that while he did not repeat the case history as outlined by Dr. Hardeman, the same facts were revealed and given in his office.

"The overall substance of the evidence is to the effect that Doyle Scroggins undoubtedly, over a considerable period of time had suffered and experienced light heart attacks, attributable at the time to indigestion, erroneously. That the coronary disease condition, was for a long period of time building up and ultimately resulted in the disabling attack on November 14, 1955.

"In compensation cases, the burden is upon the claimant to show that injuries or disabilities were the result of an accident that not only arose out of and in the course of employment but that also grew out of or resulted from the employment and that there was some

causal connection between the work followed and the accident or disability. *American Cas. Co.* v. *Jones,* 224 Ark. 731, 276 S. W. 2d 41; *Farmer* v. *L. H. Knight Co.,* 220 Ark. 333, 248 S. W. 2d 111; *Pearson* v. *Faulkner Radio Serv. Co.,* 220 Ark. 368, 247 S. W. 2d 964.

"Under § 81-1302, Ark. Stats., injury is defined: '(d) Injury means only accidental injury arising out of and in the course of employment, including occupational infections arising out of and in the course of employment.' "

"Upon an appeal from an order or award of the Commission, the Circuit Court shall review among other things:

"3. That the facts found by the Commission do not support the order or award.

"4. That there was not sufficient competent evidence in the record to warrant the making of the order or award.

"The claimant, Doyle Scroggins, filed his claim for disability benefits originally, predicated upon the grounds that he had sustained an accidental injury arising out of and in the course of employment. Whether or not the heart attack and its disabling effect grew out of the course of his employment and whether or not, from the evidence, there was a causal connection between the accident and injury; two requirements must be met. There must be shown to have been an accident to Doyle Scroggins and a causal connection between the accident and injury.

"The decisions of the Supreme Court have many times held that strain or over-exertion due to physical condition predisposing employee to injury, is an 'injury' within the meaning of the Compensation Act. *Herron Lumber Co.* v. *Neal,* 205 Ark. 1093, 172 S. W. 2d 252; *Tri-States Const. Co.* v. *Worthen,* 224 Ark. 418, 274 S. W. 2d 352; *McGregor & Pickett* v. *Arrington,* 206 Ark. 921, 175 S. W. 2d 210.

"However, the proof must show a causal connection between the employment and injury in general. The

Workmen's Compensation Act does not call for general accident insurance but its purpose is to compensate only for losses resulting from risk to which the fact of engaging in industry exposes the employee. *Birchett* v. *Tuf-Nut Co.*, 205 Ark. 483, 169 S. W. 2d 573; *Barrentine* v. *Dierks Lumber Co.*, 207 Ark. 527, 181 S. W. 2d 435; *Simmons Natl. Bank* v. *Brown*, 210 Ark. 311, 195 S. W. 2d 539.

"There is no serious dispute or conflict in the evidence. The pathology of the case history shows that Doyle Scroggins on the night of November 9, 1955, suffered a coronary infarction. Dr. Mobley frankly stated in his testimony that he had on this night erroneously diagnosed the illness as indigestion and that it was in fact a heart attack. Doyle Scroggins, had apparently no actual knowledge between November 9th, and November 14, 1955, when he resumed work, that he had actually suffered a heart attack.

"Formerly, under the decisions of the Supreme Court, to warrant an award for compensable benefits, based upon an injury occurring during the course of employment, it was required that not only must the proof show causal connection between the accident and the injury, but that as to the accident, same must have been the result or the contributing result of over-exertion, strain or some occurrence of a physical nature, such as a mishap, which was not foreseeable, unanticipated and unexpected, nor occurring in the performance of the duties of the employment in a normal manner. *Herron Lumber Co.* v. *Neal*, 205 Ark. 1093, 172 S. W. 2d 252; *McGregor & Pickett* v. *Arrington*, 206 Ark. 921, 175 S. W. 2d 210; *Harding Glass Co.* v. *Albertson*, 208 Ark. 866, 187 S. W. 2d 961.

"In the case of *Triebesch* v. *Athletic Mining & Smelting Co.*, 218 Ark. 379, 237 S. W. 2d 26, the Court quoted with approval the law as declared in *Clover, Clayton & Co.* v. *Hughes* (1910) A. C. 242:

" 'An accident arises out of the employment when the required exertion producing the accident is too great

for the man undertaking the work, whatever the degree of exertion or condition of health . . .' ''

"And the Court said further in this case quoting from *Sturgis Brothers* v. *Mays,* 208 Ark. 1017, 188 S. W. 2d 629:

" 'Nor is it a defense that the workman had some predisposing physical weakness but for which he would not have broken down. If the employment was the cause of the collapse, in the sense that but for the work he was doing it would not have occurred when it did, the injury arises out of the employment.' ''

"Following the interpretation of an "accident" as related to the work performed, the appellate court in the case of *Bryant Stave & Heading Co.* v. *White,* 227 Ark. 147, 296 S. W. 2d 436, reiterated the definition of an "accidental" injury as discussed in the *Triebesch* case, *supra.* At page 150 in the *Bryant Stave Co.* case, the court in part said: '. . . There is no statutory requirement that the cause of the injury itself must also have been an accident. What the statute says is that the injury itself must have been accidental, that is, unforeseen and unexpected. When the two sections are read together, it is apparent that "accidental injury" means every injury to an employee arising out of and in the course of his employment except those injuries caused by his intoxication or by his willful intention to bring about the injury or death of himself or another.' ''

"At page 150 of the opinion:

" 'A very substantial majority of the courts of this country adopted and followed the English rule and hold that an injury is accidental where either the cause or the result is unexpected or accidental, although the work being done is usual or ordinary.' ''

"And at page 151 of the opinion:

" 'A clear majority of jurisdictions now hold that when the usual exertion leads to something actually breaking herniating, or letting go, with an obvious sud-

den mechanical or structural change in the body, the injury is accidental.' ''

"At page 154 of the Opinion:

" 'We agree that litigants, lawyers and members of the Commission are entitled to a definite and unequivocal settlement of the legal question here posed.' (The Court had previously cited and discussed prior holding involving increased work load, or unusual exertion.)

"In undertaking to do so, we see no valid reason for not aligning Arkansas with the decided weight of authority on the subject by adhering to our holding in *Albertson* v. *Harding Glass Co., supra*."

"At page 155 of the Opinion:

" 'Notwithstanding anything we may have said in prior cases, we hold that an accidental injury arises out of the employment when the required exertion producing the injury is too great for the person undertaking the work, whatever the degree of exertion or the condition of his health, provided the exertion is either the sole or a contributing cause of the injury. In short, that an injury is accidental when either the cause or result is unexpected or accidental, although the work being done is usual or ordinary.' ''

"In the case of *Clark* v. *Ottenheimer Bros.* decided July 1, 1958, 229 Ark. 383, 314 S. W. 2d 497, the law as stated in the *Bryant Stave Co.* case, *supra,* was affirmed with approval, the Court again stating the law, p. 1040:

" 'It is our view that an accident may occur when there is no increase in the work load.' ''

"Under the *Clark* case, *supra,* the requirements to be made by a claimant are as follows:

" 'It is conceded that appellant is not entitled to compensation unless the record discloses two things: One, that she had an accident as that word is defined by our decisions; and, Two, that there was a causal connection between the accident and the injury.' ''

"With the benefits and declarations of law as regards 'accidental injury', as established in the *Bryant Stave Co.* and *Clark* v. *Ottenheimer* cases cited above, as a guide in determining whether or not, claimant, Doyle Scroggins, or his widow and children are entitled to compensable benefits, reference at this point should be directed as to the reasons and grounds set forth in the opinions filed by the Referee and Commission in denial of liability.

"In the Opinion rendered by Hon. L. D. Blair, Referee, dated January 11, 1957, the claim was denied. In the Conclusions of Law, as outlined in the opinion at page 6, the Referee, to sustain his denial of liability, stated in part:

" 'This claim is similar to others that have been before this Body and our Supreme Court and we cite a few of the cases that have been studied in reaching the decision now made in this claim, to-wit: (Citing cases.)' "

" 'We find that the Supreme Court has, by its decisions established certain definite guide posts which when applied to Section 2(d) of our Workmen's Compensation Act, provide a test of whether or not there is evidence to support a finding that an injury was accidental and arising out of and in the course of employment . . . the medical evidence and testimony introduced in this claim show that this condition did exist prior to the onset of the heart attack on November 14, 1955: (2) some effort was made on the part of the claimant to establish an increased work load and overtaxing work load effort to accomplish the work load . . . other witnesses . . . testified that the claimant was doing his normal work, and that there was no increased work load by reason of the work he was doing on that date . . . The testimony reflects that the claimant suffered the first symptoms of his heart attack in his own home in the evening or night of November 14, 1955. There is no evidence or tender of evidence that the claimant collapsed on the job and the claimant's only testimony of a prior episode

or experience was on November 9, 1955, when he suffered a similar experience . . .'

" 'Using further test as set down by the Supreme Court of Arkansas we consider test (3) the claimant offered no testimony on the question of adverse working conditions . . . and as to the test (4) as set out by our Supreme Court, a collapsed worker on the job, the evidence clearly shows in this case, as pointed out above, that the claimant did not suffer his heart attack until the night of November 14, 1955, and that same was not diagnosed specifically as a coronary infarction until the following day when a cardiogram was done.' "

"In an opinion rendered by the Full Commission, dated June 14, 1957, a denial of claimant's claim was made. The Full Commission adopted and approved the statement of the case as made by the Referee and adopted same as its own.

"The Full Commission held that the disability of Doyle Scroggins beginning November 15, 1955, was not the result of an accidental injury arising out of and in the course of his employment. To sustain the findings of the Full Commission, in the conclusions reached, it stated:

"Page 3:

" '. . . Doyle Scroggins' coronary infarction occurred on the night of November 9, 1955, while he was in a pool hall, several hours after he quit work . . . We find nothing in the record which would indicate to us that there was any increased work load or anything that could reasonably be construed as an accidental injury.' "

"Page 4 continuing:

" 'In short, we believe that the overwhelming preponderance of the evidence is to the effect that there was no causal connection between claimant's employment and his infarction, or heart attack, on the night of November 9, 1955. November 9, 1955, was on Wednesday. Doyle Scroggins did not work on November 10th or 11th, which were work days, and November 12th and 13th were

not work days. The medical evidence as to the effect that it takes several weeks or more to recover from a coronary infarction, if one recovers, so it, therefore, seems clear to us that Doyle Scroggins had certainly not recovered from his infarction of November 9th when he returned to work for this employer on November 14, 1955. Doyle Scroggins had continuing symptoms on November 14th, and that night after he had ceased his employment and had been away from work for several hours, he suffered another severe heart attack . . .' ''

''The Court has copied rather at length, the statement of the Full Commission in its conclusions, of the interpretation placed on the testimony as tending to sustain its findings and denial of liability. The trial court, from a careful study of the evidence, cannot reconcile nor accept the construction of the Full Commission placed thereon.

''Then too, the Referee and the Full Commission, based its findings apparently upon the theory that claimant suffered no heart attack while in the actual performance of the course of his employment, and if he did suffer such an attack, same did not occur by reason of any increased work load, strain or over-exertion thereby overlooking the law as declared in the *Bryant Stave Company* and *Clark* v. *Ottenheimer* cases, *supra*.

''At page 20 of the Transcript of Testimony, Scroggins testified that on November 9, 1955, in the afternoon about 3:00 o'clock he had what he thought was a 'little indigestion'. On the night of November 9th, he suffered the first severe heart attack as described by him. The symptoms, location of pain, etc., were subsequently diagnosed by the examining doctors as being a coronary heart infarction. While claimant laid off the next two work days following, as he testified, he had no knowledge, nor did his attending physician, that he had an existing heart condition. Otherwise, it would be natural to assume he would not have resumed his work on November 14th.

''At page 9 of the Transcript of Testimony as to the November 14th attack, Scroggins testified as to the oc-

currence of the heart attack about 9:00 a.m. That he 'grabbed his chest' because of the pain, rested for a brief interval, went back to work 'and it hit me again and I walked over and set down . . .' That he got a soft drink thinking he would get relief from drinking it. Page 10 of the Transcript of Testimony, that he went back to work after lunch and 'I was still cleaning up around there and it hit me . . . and I layed flat on my back on it and it occurred practically off and on all day and every time it would leave me I'd try to work and it would hit me and I'd have to quit.' That his stomach didn't bother him at the time, only his chest. The testimony just referred to is clear and unambiguous and undisputed and accepted by the doctors as factually true and constituting the basis and history justifying the diagnosis that Scroggins suffered a heart attack on both the 9th and 14th day of November. The court in its interpretation and construction of the evidence outlined above, is not trespassing upon the province of the Commission to pass upon the weight and credibility of the facts and the witnesses. In this case there is no serious conflict as to the factual situation and what actually occurred.

"Mr. Blair stressed the point, as he viewed the testimony, that respondent offered testimony to show 'That nothing unusual or out of the ordinary was occurring on claimant's last day of work.' Tr. of Test. p. 6 of Conclusions of Law. But the record does not bear out such finding. And again quoting: 'Claimant suffered the first symptoms of his heart attack in his own home in the evening or night of November 14, 1955.' And 'There was no evidence and no tender of evidence that the claimant collapsed on the job . . .' The Conclusions just referred to are not sustained by the evidence and to the contrary are in direct conflict with the undisputed testimony of Doyle Scroggins and Clarence Fuller, his co-worker.

"In the *Clark* v. *Ottenheimer Brothers* case, *supra,* in the opinion rendered by Justice Ward, the record showed that Mrs. Clark, as an employee, had noticed her back hurting slightly for about two weeks before it be-

came so severe she had to quit work. She had an operation and respondent denied liability upon her claim of compensable injury. Her injury occurred in the regular performance of her duties incident to her employment. On appeal the Court, in reviewing the Commission's finding said, page 1039 of the opinion:

" 'We have read the Commission's opinion carefully and we are convinced it was meant to deal only with the question of whether or not there was an accident, and in doing so, we think it fell into error.' "

"Two questions are therefore to be resolved in light of the testimony and of the decisions of the Supreme Court above cited and referred to. Was there an accident and accidental injury arising out of the employment, and secondly, was there a causal connection between the 'accident and the injury,' quoting from the opinion in the *Clark* case, *supra.*

"Under the undisputed evidence, and under an apparent wrongful interpretation of the applicability of the law with reference to 'accidental injury', the trial court feels that the Commission as a matter of law, was not justified in finding and holding there was no accidental injury occurring during the course of the employment. In the *Clark* case, the Court stated that none of the four doctors treating claimant were ever asked if the injury could have been caused by the work she was doing, and none expressed an opinion about the matter one way or the other.

"In the case now before the Court, the testimony, some by deposition and other by medical reports incident to examination of claimant by the examining doctors, tended to show that a heart attack could occur at any time and place without reference to work being performed, even if asleep. That the heart condition, culminating in the attacks on November 9th and November 14th, undoubtedly were of long origin and that the apparent digestive disturbances were undoubtedly heart attacks or symptoms of a heart condition. Dr. Mobley, page 53 of the Trans. of Test. testified:

" 'Once they have a damaged heart, then the conservative method of living and protecting that heart is essential if that individual wants to go on and live a normal life.' "

"Dr. H. E. Hyder testified in response to a question, Tr. of Test. p. 75: 'Q. Well, I didn't ask you if it caused it, would it (work) have contributed to the bringing about of this attack, maybe earlier than it would otherwise have occurred?' And he answered: 'A. If there was any undue exertion it could have; an awkward position, straining, pulling.' "

"At p. 77 of the Trans. of Test. on cross examination, Dr. Hyder was asked the following question:

"Q. Now Doyle was pulling grass that morning, but if he had been digging a hole, the exertion of digging a hole might have been just as much a contributing factor if there was such a thing, to this infarct, could it not?"

" 'A. Yes, sir.' "

"In the testimony given by Doyle Scroggins as to the attack of November 14th, he stated that when he stopped his work he obtained relief from this chest pain. When he renewed the work, the pain in his chest reappeared. Whether or not he was digging a hole or performing any other normal labor requiring exertion, the work itself and exertion increased the chest pain, which unquestionably was hastened and quickened by the labor itself. Under the evidence as outlined and referred to, and not contradicted, the Court finds and holds that as a matter of law there was a causal connection between the work performed in the course of the employment of claimant, and the injury. Therefore, there was an accidental injury occurring in the course of the employment and also a causal connection between the accidental injury and the work performed. Dr. Mobley testified that to insure prolonged life, a person suffering as Doyle Scroggins was from a serious heart condition, could only survive provided he lived a quiet life. Dr. Hyder testified in effect that the work performed by claimant if it involved undue exer-

·tion, an awkward position, straining or pulling could have contributed to the attack occurring. Under the evidence and record in this case, Scroggins came within the interpretation of the Court in that in light of his physical condition, existing heart condition, without reference to the degree of exertion or the condition of his health, by the work performed he provided the exertion which was either the sole or contributing cause of the injury.

"As this court views and interprets the decisions bearing on the questions involved, it is not material as to the origin or cause of the heart condition suffered by Scroggins. The pertinent and relevant fact is that an impaired heart condition did exist and that a disabling accidental injury occurred as the sole result of the work performed, or else that the work performed was a contributing factor in the occurrence of the attack which proved to be disabling. Indulging in the field of probabilities and possibilities, as the doctors are so wont to do, the attack of November 14th might not have occurred had Scroggins had actual knowledge that the attack of November 9th was not of digestive origin. This latter statement is not made by way of criticism of course as to any prior erroneous diagnosis, but rather to stress the point that claimant in all good faith sought to renew his job on November 14th without enlightenment that such work could or might prove dangerous.

"As to the Commission's determination of the merits of any given claim, the Workmen's Compensation Law should be broadly and liberally construed and doubtful cases should be resolved in favor of claimant. *Peerless Coal Co.* v. *Jones,* 219 Ark. 181, 240 S. W. 2d 647. On appeal and review by the Circuit Court, the findings of the Commission are entitled to the same verity as that of a jury. In the legal conclusions reached by the Court, same is based as to whether or not from the record presented there is substantial evidence to warrant the findings of the Commission which is a question of law. The Court therefore has not assumed, nor is it permitted to pass upon the weight and credibility of witnesses or of the evidence except as to the presence or absence of sub-

stantial evidence to sustain the Commission's denial of relief. *J. L. Williams & Sons* v. *Smith*, 205 Ark. 604, 170 S. W. 2d 82.

"Under letter dated May 4, 1957, or statement as it may be designated, signed by Dr. H. E. Mobley and introduced in the record without objection, same reflects that Doyle Scroggins had a coronary infarction November 9, 1955, for which he had been treated continuously. That he had been doing well but had not returned to work prior to his death. That on the night of February 25, 1957, he died in St. Anthony's Hospital in Morrilton, Arkansas, from acute coronary infarction.

"From the record, exhibits and statement of Dr. Mobley, Doyle Scroggins was totally disabled from November 14, 1955, until the time of his death on February 25, 1957. At the time of the accidental injury, or total disabling heart attack, it is agreed that Doyle Scroggins was drawing the sum of $242.50 per month as wages, which would entitle him to the maximum benefits under the Compensation Act. It is to be noted, of course, that during the period of time in which evidence was being taken and the record completed as to the claim, that claimant was still alive. The Opinion of the Referee was filed February 11, 1957, about two weeks prior to the death of claimant, and the Opinion of the Full Commission filed June 14, 1957, after the death of claimant. Since there was the denial of an award by the Commission, no compensable benefits, death or otherwise were considered by the Commission. It is admitted in the record as factually true and correct that Doyle Scroggins did receive "full salary" or the sum of $242.50 per month from the time of his disability through the month of July 1956, at which time payment of wages was stopped by the Respondent.

"Inserted in the Conclusions of the Opinion filed by the Full Commission, dated June 14, 1957, appears the statement as to the compensable benefits properly allowable in the event claimant is found entitled to recover:

" 'In our opinion there is no question but that respondent would be entitled to a credit for all that they

paid Doyle Scroggins after November 14, 1955, to apply on any compensation found to be due Doyle Scroggins subsequent to the foregoing date, such opinion being based upon the Act, as well as the above referred to decision of our Supreme Court.' ''

''The case referred to in the Opinion as furnishing the guide for computing compensable benefits where wages have been paid by the employer subsequent to the occurrence of the disability to the claimant is that of *Lion Oil Co.* v. *Reeves,* 221 Ark. 5, 254 S. W. 2d 450. As the Commission calculated and summarized the compensable benefits, had an award been made, considering the wages paid claimant through July 1956, it was stated that considering the regular monthly wages paid Scroggins at $242.50 per month, from Nov. 14, 1955, through July 1956, Scroggins had received approximately $1,819, making respondent entitled to a credit of about $890 for any compensation benefits due Scroggins, if entitled to recover. In other words, as the Commission restated the question, Scroggins had received and had been paid more by Respondent since November 14, 1955, than he would have been entitled to receive if he were found to have received a compensable injury entitling him to compensation from November 15, 1955, to February 25, 1957, at the maximum rate of $25 per week. At pages 4 and 5 of the Transcript of Testimony, Mr. Trimble, attorney for Respondent, stated that if in the alternative, if liability was upheld that Respondent would 'like credit for the additional payments which were made if it should be shown there is liability.' Counsel for claimant, Mr. Williams, responded: 'There will be no controversy as far as that's concerned.' ''

''Under Paragraph (e), § 81-1323, it is provided that no compensation for disability of an injured employee shall be payable for any period beyond his death, but that after death, compensation for disability may be made after death of employee for the period of disability preceding death. Section 81-1310 covers compensation benefits, and maximum and minimum amounts, and under

Par. (b) provision is made for compensation payable to the dependents for the death of an employee. Sec. 81-1315 provides for funeral expenses where death results from the injury.

"At page 4 of the Transcript of Testimony by statement from counsel for claimant, and without objection, the claim originally filed in the name of Doyle Scroggins was to be continued in the name of Mrs. Emma Louise Scroggins, as widow. Two children survived, Doylene Scroggins, a daughter 19 years of age, and a boy, David Scroggins, 12. Under the provisions of § 81-1315, dealing with compensation for death of an employee, as to family relationship, it is provided, subject to the limitations set out in § 10, (81-1310, Compensation Act) that the widow under Par. C, First, is entitled to thirty-five per centum of the compensation award, if there is no child, and under Second, in addition the compensation payable for one child, fifteen percentum, or a total of fifty percentum of the compensation payable. Under Par. (d) § 81-1315, Doylene Scroggins, daughter, having at the time of the taking of depositions, reached the age of 19 years, would not be entitled to compensatory benefits in the absence of proof otherwise warranting such an award.

"Under § 81-1310, Par. (b), it is provided in part:

" 'Compensation payable to the dependents of a deceased employee, as above provided, shall be, in addition to funeral allowance and those benefits which were paid or to which the injured employee was entitled in his lifetime.' "

"The Court has reviewed at length both the evidence as well as the exhibits and record before it, as well as the applicable law only with reference to whether or not there is substantial evidence to sustain the Order and Opinion rendered by the Full Commission.

"Since the present case, on appeal, is not tried *de novo*, and the court can only review questions of law and may modify, reverse, remand for rehearing, or set aside the Order, upon the four grounds, of any of the four

grounds set forth in § 81-1325 (b), the judgment of the Court is as follows:

"It is considered, ordered and adjudged that the facts found by the Commission do not support the Order found and declared in the Opinion rendered June 14, 1957, and that there was not sufficient competent evidence in the record to warrant the making of the order denying compensation benefits.

"It is further considered, ordered and adjudged, that said cause be remanded to the Workmen's Compensation Commission with direction for rehearing, including the introduction of additional proof, if necessary, to determine the question of dependency of Mrs. Emma Louise Scroggins, widow of Doyle Scroggins, deceased, and that of the minor son, David Scroggins, occasioned by the death of Doyle Scroggins. That the Workmen's Compensation Commission, upon the remand, fix and determine the compensatory benefits due claimant, Mrs. Scroggins, and her minor son, David Scroggins, in accordance with statutory provisions, and for the allowance of funeral expenses and to fix and determine the attorneys' fees properly allowable claimant's attorneys."

Justice ED F. McFADDIN joins in this dissent.