AL-CO PROPERTIES, INC., et al., Petitioners, v DEPARTMENT OF STATE, Respondent.

Fourth Department, July 9, 1982

APPEARANCES OF COUNSEL

*Johnson, Mullan, Brundage & Keigher, P. C. (George A. Schell* of counsel), for petitioners.

*Robert Abrams, Attorney-General (Dale E. Skivington* of counsel), for respondent.

OPINION OF THE COURT

SCHNEPP, J.

Petitioner Don V. McWilliams, a licensed real estate broker doing business as Al-Co Properties, Inc., commenced this CPLR article 78 proceeding to review a determination of the Department of State that he demonstrated

untrustworthiness and incompetency (see Real Property Law, § 441-c) and that a provision of the "Broker-Salesman Contract" used by Al-Co governing the payment of listing commissions is improper and must be discontinued. As a result of this determination, petitioner's license was suspended for a definite period of three months and for an indefinite period thereafter until he submits proof that the listing commissions due a former associate have been paid.

Our review of the determination "is limited to ascertaining whether the record contains substantial credible evidence upon which [the Secretary of State] could reasonably conclude that petitioner demonstrated incompetence and untrustworthiness" (*Matter of Rustine v Patterson,* 82 AD2d 969). Although the concept of substantial evidence is not readily defined, it "consists of proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably — probatively and logically" (*300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 181; *Geisler v Department of State,* 73 AD2d 392, 397). Where upon review of the whole record a rational basis exists to support the findings upon which the State Department's determination is predicated, the determination of the department should be upheld (see *Matter of Purdy v Kreisberg,* 47 NY2d 354, 358; *Matter of Pell v Board of Educ.,* 34 NY2d 222, 230-231). In this regard, we have no right to review the weight of evidence, beyond ascertaining whether substantial evidence supports the determination (see *(Matter of Purdy v Kreisberg, supra,* p 358; *Matter of Pell v Board of Educ., supra,* p 230; *Matter of Rustine v Patterson,* 82 AD2d 969, *supra*).

We find substantial evidence in the record to support the hearing officer's determination that petitioner demonstrated untrustworthiness and incompetency and do not find that the penalty for this violation was excessive. The State Department, however, was without jurisdiction to declare the commission clause of the employment contract invalid and for that reason we nullify that determination.

A review of the record reveals that there was a close issue of fact regarding whether McWilliams demonstrated

untrustworthiness. The proof is that on November 30, 1977 McWilliams and two Al-Co Associates, Bernice Busam and Leonard Van Keuren, after disclosing their interest, made a written offer to purchase a 60-acre parcel of farmland from Wesley Arnold and his wife, who had signed an exclusive listing with Al-Co for the sale of that parcel and an adjoining 27-acre parcel of farmland. On December 3, 1977 one Norman Kendall was shown the property by Renata Reber, then an Al-Co associate, who, while drafting a purchase offer at Kendall's request for both parcels, received an interoffice telephone call from McWilliams who stated "don't cut my throat". Reber testified that after Kendall left to take the purchase offer to his attorney, McWilliams explained to her that he had submitted a purchase offer on the property which was verbally accepted. She further testified that when she returned to the office later that day to meet Kendall, she overheard a conversation between McWilliams, Van Keuren and Busam in which Van Keuren stated that he would inform Kendall that he was buying the 60-acre parcel and that Kendall could buy the 27-acre parcel with the house. After McWilliams left the office Kendall returned with his attorney's approval of the purchase offer. Both Reber and Kendall testified that Van Keuren then told Kendall that a written purchase offer had been accepted on the 60-acre parcel and only the 27-acre parcel remained for sale. Kendall, who was interested in purchasing only the entire farm, then left with his signed purchase offer, thinking that the property had been sold. Later Kendall dealt directly with Arnold and eventually purchased the entire property. On December 10, 1977 McWilliams terminated Reber's employment due, according to her, to the Arnold "problems * * * over the weekend". Both McWilliams and Van Keuren testified that Reber's employment was terminated because she stole other salespersons' prospects, that because of a prior contract Kendall was McWilliams' prospect, and that McWilliams was referring to that relationship when he said "don't cut my throat". McWilliams denied that he ever told Reber anything more than that he had submitted an offer that "looked good". Van Keuren denied that he ever told Kendall that the property was

sold, or that an offer had been accepted, and testified that his only statement to Kendall was that a purchase offer had been made on the property.

After hearing this proof, the hearing officer found that "[r]espondents [McWilliams and Van Keuren] deliberately misrepresented the status of their purchase offer to the Kendalls." This finding, however, is not supported by the record.

McWilliams was not present when Van Keuren misrepresented the status of the purchase offer to Kendall and the act of deception occurred. The only person to whom McWilliams spoke regarding the status of the purchase offer was Reber, who testified that she knew, and so advised McWilliams, that a verbal offer was not binding and did not prevent her from submitting another offer.

A possible basis for finding that McWilliams demonstrated untrustworthiness with relation to the Kendall transaction would be a finding that McWilliams had "actual knowledge" of Van Keuren's misrepresentation (see Real Property Law, § 442-c). Constructive knowledge premised solely upon the employer-employee relationship of the two individuals would be insufficient (see *Geisler v Department of State*, 73 AD2d 392, *supra*).

There is substantial evidence in this record that McWilliams was present when Van Keuren said, according to Reber, that he (Van Keuren) should tell Kendall that "I have the purchase offer and that I am buying the property"; "I will say that I am buying the property, the 60 acres and he can buy the 27 acres with the house." It could be found, based on these statements made in McWilliams' presence, that McWilliams knew of the proposed Van Keuren misrepresentation which was designed to deceive and discourage Kendall from submitting an offer on the entire Arnold property and that by his silence McWilliams acquiesced in the misrepresentation which was later made in his absence. Reber's veracity was challenged at the hearing and the hearing officer made no finding with relation to any alleged statement made by Van Keuren in McWilliams' presence. In fact, the hearing officer made no finding whatsoever regarding McWilliams' responsibility for the acts of Van Keuren.

The law is clear that the decision of an administrative body following a hearing required by law must be carefully justified by factual findings (see, generally, Gabrielli and Nonna, Judicial Review of Administrative Action in New York: An Overview and Survey, 52 St Johns L Rev 361). There is no doubt that the administrative body has the power to draw inferences from established facts. If the factual findings are supported by substantial evidence the determination may not be reversed. Even if there is substantial evidence to support a position adverse to the decision made by the administrative body, the court may not substitute its own view of the weight of the evidence for that of the administrative body.

An administrative determination, however, may only be sustained on the agency's findings and for the reasons stated by the agency, even where evidence in the record may be sufficient to support the determination for different reasons (see 3 Davis, Administrative Law Treatise [2d ed], § 14:29, p 128; see, also, 6 NY Jur 2d, art 78, § 240, p 132). "A court reviewing a determination of an administrative agency must judge the propriety of that determination solely upon the grounds invoked by the agency, and the court is powerless to affirm the agency through reasoning it deems more appropriate (*Matter of Blum v D'Angelo,* 15 AD2d 909; cf. *Matter of Hartman [Joy],* 47 NY2d 624)" (*Matter of Stern, Simms & Stern v Joy,* 48 AD2d 788; see *Matter of Golisano v Town Bd. of Town of Macedon,* 31 AD2d 85; see, also, *Securities & Exch. Comm. v Chenery Corp.,* 332 US 194, 196). If such grounds are inadequate or improper the court is powerless to affirm the action below by substituting what it considers a more adequate or proper basis (see *Securities & Exch. Comm. v Chenery Corp., supra,* p 196).

Thus, while the hearing officer could have determined the issue of credibility and drawn the inference from the record that McWilliams acquiesced in Van Keuren's statement to Kendall, and charged McWilliams with actual knowledge thereof, he failed to do so, and without such a finding the hearing officer could not have concluded that McWilliams deliberately misrepresented the status of the purchase offer to Kendall.

There are, however, grounds supported by the findings and the record which upon analysis appear to have been relied upon by the hearing officer in reaching his conclusion that McWilliams demonstrated untrustworthiness. The hearing officer found that Reber completed a purchase offer for Kendall after having been told by McWilliams "don't cut my throat", that she upset the "carefully laid plan" to discourage a Kendall offer for the entire Arnold property and to "place respondents in a better position to be able to purchase the one 60 acre parcel that they wanted", and that "for her efforts [she] was discharged from her employment of five years by respondent McWilliams". The hearing officer concluded that "McWilliams, supposedly acting as agent for the Arnolds, put his own personal interests above and beyond that of his principal [the Arnolds]" and that "[t]his demonstrated untrustworthiness on behalf of respondents [McWilliams and Van Keuren]".

Although the term "demonstrated untrustworthiness" as used in section 441-c of the Real Property Law has never been precisely defined, it has been stated that: " '[T]here should be such factual presentation concerning acts or conduct by the licensee or his agent as would warrant a conclusion of unreliability, and which establishes that any confidence or reasonable expectation of fair dealing to the general public would be misplaced.' " (*Matter of Gold v Lomenzo,* 29 NY2d 468, 477, quoting *Matter of Chiaino v Lomenzo,* 26 AD2d 469, 472). The factual findings, supported by substantial evidence in the record, that McWilliams fired Reber after she prepared a purchase offer for the Kendalls in seeming contempt of his directive not to "cut" his "throat" (impliedly because of his verbally accepted offer), warrants a conclusion of unreliability on the part of McWilliams and justifies the determination of "demonstrated untrustworthiness". An inference may be drawn from these acts that McWilliams demonstrated a sharp eye for his own interests and that in his own mind his incentive to acquire the 60-acre parcel of land transcended his obligation to his client, i.e., to obtain a ready, willing and able buyer to purchase the property on the terms of, and for the best interest of, his client Arnold. As agent for the owner of the real property, McWilliams

was in a position of trust and owed a duty of good faith and loyalty to his principal (see *Matter of Grant Realty v Cuomo,* 58 AD2d 251, 255). The record supports the finding that McWilliams placed his own self-interest ahead of his principals, the Arnolds, and that, therefore, any confidence in him or reasonable expectation of fair dealing to the general public by him would be misplaced. We conclude, therefore, that there is a basis for the hearing officer's determination of demonstrated untrustworthiness which is supported by the record and justified by his factual findings and that the determination, in this regard, should be confirmed.

However, the hearing officer's determination based on Reber's complaint that it was improper to include a provision in the employment contract precluding the payment of listing commissions, even though enacted in good faith, should be annulled. The imposition of sanctions against a real estate broker arising from a contractual dispute between a broker and a salesperson is unwarranted where the contractual dispute has no impact on the public at large and, as in any other private contract dispute, any controversy between the contractual parties must be resolved by them either privately or in a court of law (*Matter of Stowell v Cuomo,* 69 AD2d 9, affd 52 NY2d 208).

Accordingly, the action of the Department of State should be modified to annul and vacate its determination declaring invalid the provision in the employment contract and as modified, the determination should be confirmed.

DILLON, P. J., SIMONS, DOERR and BOOMER, JJ., concur.

Determination unanimously modified, and as modified, confirmed, without costs.