JIM WALTER HOMES; Travelers Insurance *v.*
Johnny BEARD

CA 02-903                                           120 S.W.3d 160

Court of Appeals of Arkansas
Divisions I and IV
Opinion delivered June 25, 2003

*Anderson, Murphy & Hopkins, L.L.P.*, by: *Scott Provencher*, for appellants.

One brief only.

K AREN R. BAKER, Judge. Appellee was employed by appellant Jim Walter Homes from 1980 until he sustained a compensable injury to his back on October 3, 1983. He was injured while moving particle board that was over his head; he

reached, bent back too far, and experienced stabbing pain in his back and down his left leg.

Three hearings were conducted on this claim. Prior to the hearing that is the subject of this appeal, the first of these hearings was conducted on April 22, 1985, at which time the issue was appellee's entitlement to continued temporary total-disability-benefits subsequent to February 26, 1985, or whether appellee had reached the end of his healing period. During the April 22, 1985, hearing, appellee presented testimony regarding his continued complaints of pain attributable to the compensable injury, medication taken relative to his symptoms and complaints, and his inability to engage in gainful employment as a result of his injury. Appellee's principal treating physician was Dr. John Lohstoeter, an orthopedic physician. In addition to Dr. Lohstoeter, appellee was seen and/or treated by Dr. Alfred Kahn, a diagnostic internist; Dr. Carlos Arazo, a neuropathologist; and Dr. Cagle Harrendorf, a neuropsychiatrist. Dr. Lohstoeter opined that the appellee's pre-existing osteoarthritis was asymptomatic prior to the October 3, 1983, compensable injury and noted some nerve root irritation and some abnormal change stemming from the lumbar disc were present at L4-5 and S1 elements.

On March 24, 1988, a second hearing was conducted on the issue of appellee's entitlement to permanent total disability benefits. At this hearing, it was determined that while appellee had not undergone surgery relative to his October 3, 1983 compensable injury, he had been hospitalized on six different occasions for treatment for his injury. He had continued treatment with Dr. Lohstoeter, who noted that while appellee had many inflammatory changes, it was his opinion that the cause of the injury was the same, and as such, it was a post-traumatic or post-injury syndrome of inflammation. During the course of the March 24, 1988 hearing, appellee testified regarding limitations on his physical activities, which included standing, lifting, bending and walking. He attributed these limitations to his compensable injury. Specifically, he attributed the limitations to the constant pain he experienced as a result of the injury. He was found to have been permanently and totally disabled as a result of the October 3,

1983, compensable injury. This decision was affirmed by this court in an August 29, 1990, opinion.

On December 13, 1993, a hearing was conducted to evaluate appellants' claim that there had been a change in appellee's condition that warranted a modification of the previous order of permanent total disability.

Dr. Scott Bowen, a Little Rock orthopedic physician, began treating appellee for his compensable injury after Dr. John Lohstoeter retired. Dr. Bowen first saw appellant in January 1989, and he diagnosed appellee's complaint as that of chronic lumbosacral strain with secondary degenerative changes at the lower L-5, S-1 level. During the December 13, 1993 hearing, evidence disclosed that appellee was being treated by Dr. Henry Good, a Little Rock psychiatrist, who was also his principal treating physician. Appellee had initially been seen by Dr. Good on September 13, 1985, at the request of Dr. John Lohstoeter. Dr. Good prescribed medication for appellee that included Wellbutrine, Lorcet Plus, Soma, and Halcyon. Appellee was also prescribed Feldene, for pain. Dr. Good testified that the claimant suffered from chronic pain syndrome and depression.

Appellee was also seen by Dr. Reginald Rutherford, a Little Rock neurologist, pursuant to a referral by Dr. Bowen. While under the care and treatment of Dr. Rutherford, appellee underwent a course of treatment for myofascial release, comprising three sets of trigger point injections with stretch and spray physical therapy. The treatment regimen of Dr. Rutherford failed to relieve appellee's chronic pain. Ultimately, it was held that appellee's condition had not changed and that he remained permanently and totally disabled.

Appellee has had ongoing and continuing medical treatment since his October 3, 1983, compensable injury. He is currently being treated with Dr. Raymond Remmel, a Little Rock psychiatrist, for his injury. Appellee noted that in his sessions with Dr. Remmel, he continued to relate that his back was getting worse in terms of pain and symptoms, although he had not suffered a subsequent injury after October 3, 1983. Appellee also observed that since his accident, despite the fact that he is taking medication and

physical therapy, he has not experienced a complete relief from pain. His current medication includes Vicoprofen, Soma, Serax, and Desyrel. He also takes Quinine for leg cramps. Nevertheless, his symptoms have begun to progressively worsen.

Appellee stated that he continues to experience sharp pain in his lower back and in both legs, the left more so than the right. Additionally, he explained that he has experienced pain and some numbness in his legs and feet. Appellee testified that when he related his complaints of increased pain in his low back, legs, and feet to Dr. Remmel, he was referred to Dr. Richard Peek, a Little Rock orthopedic surgeon. Dr. Peek then referred him to a diagnostic clinic for possible treatment, however, the insurance company denied the claim. Appellee continued treatment with Dr. Remmel, who referred him back to Dr. Peek, who in turn, referred him to Dr. Robert Valentine. Dr. Valentine performed additional diagnostic tests and has recommended a procedure, IDET, to address appellee's pain. Appellants controverted the compensability of benefits relative to the IDET procedure including treatment under the care of Dr. Robert Valentine.

█ Appellants argue that the decision of the Commission to award appellee an IDET procedure is not supported by substantial evidence. This court reviews decisions of the Workers' Compensation Commission to see if they are supported by substantial evidence. *Deffenbaugh Indus. v. Angus*, 39 Ark.App. 24, 832 S.W.2d 869 (1992). In determining the sufficiency of the evidence to support the findings of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we will affirm if those findings are supported by substantial evidence. *Id.*

██ Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id. Farmers Cooperative v. Biles*, 77 Ark. App. 1, 4-5, 69 S.W.3d 899, 902 (2002). The determination of the credibility and weight to be given a witness's testimony is within the sole province of the Commission. *Id.* The Commission is not required to believe the testimony of the claimant or any other witness, but may accept

and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Id.* Further, the Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Estridge v. Waste Management*, 343 Ark. 276, 33 S.W.3d 167 (2000).

Appellants argue that appellee is sixty-five years of age and suffered a compensable injury over nineteen years ago. He has never had spinal surgery and has not been hospitalized for any back problem since the previous hearing held in 1993. Appellants' argument and citations to medical records can be summarized in one line from their briefs: "Clearly, this is the picture of a man . . . who suffered from degenerative changes throughout his body." Appellants do not contend on appeal that the IDET procedure is an improper mechanism for addressing the annular tears at L4-5 and L5-S1. Their contention is that the tears were not caused by an event which occurred nineteen years earlier. They also contend that the only medical evidence to support the Commission's finding is an August 4, 2000, progress note from Dr. Remmel that states: "It is more likely not a new injury and in fact just a progression of the disease process." They argue that the note is ambiguous and cite to recent medical records from Dr. Rutherford that appellee's MRI imaging "represents a progressive degenerative change consistent with aging."

■ ■ Despite appellants' contentions, the Commission's findings are supported by substantial evidence. In reaching its decision, the Commission found that no evidence in the record reflected that appellee had sustained a new injury relative to his low back since the compensable injury of October 3, 1983. The Commission noted the fact that appellee suffered from degenerative disc disease prior to the October 3, 1983, injury and that appellee's initial treating physician specified that the same was asymptomatic prior to the compensable injury. A preexisting disease or infirmity does not disqualify a claim if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the disability for which compensation is sought. *Nashville Livestock Comm. v. Cox*, 302 Ark. 69, 787 S.W.2d 64 (1990); *St. Vincent Medical Ctr. v. Brown*, 53 Ark. App. 30, 917 S.W.2d

550 (1996). In workers' compensation law, the employer takes the employee as he finds him, and employment circumstances that aggravate preexisting conditions are compensable. *Nashville Livestock, supra.*; *Ark. Power & Light, Co. v. Scroggins*, 230 Ark. 936, 328 S.W.2d 97 (1959).

> When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arise out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own negligence or misconduct.

*Home Ins. Co. v. Logan*, 225 Ark. 1036, 505 S.W.2d 25 (1974).

Accepting Dr. Rutherford's current diagnosis that the present tears identified in appellee's disc are the product of aging, the same is predicated upon a natural consequence growing from the October 3, 1983, compensable injury that was asymptomatic before that injury was sustained.

█ Accordingly, sufficient evidence supports the Commission's decision, and we affirm.

STROUD, C.J., GLADWIN, ROBBINS, AND NEAL, JJ., agree.

PITTMAN, J., dissents.

JOHN MAUZY PITTMAN, Judge, dissenting. I dissent. This case should be reversed because the Commission's opinion is premised on facts not in evidence and is not supported by substantial evidence.

The appellant was already suffering from a nonwork-related, preexisting degenerative disc disease when he sustained a compensable back injury in 1983.[1] He is permanently and totally disabled as a result of his compensable injury, but he has not been hospitalized for any back problems since 1993. Appellant is now sixty-four years old.

---

[1] The majority opinion mentions a "previous compensable injury that was asymptomatic before the October 3, 1983, injury was sustained." This is incorrect. Appellant sustained only one compensable injury, and sustained it in 1983. It is undisputed that his prior back condition was not work-related.

The current appeal involves a claim for additional medical benefits in the form of an IDET procedure to treat annular tears that arose subsequent to appellant's compensable injury. The issue at the hearing was whether this procedure was reasonably necessary treatment for appellant's compensable injury, as opposed to his preexisting back condition. The Commission decided that the IDET procedure was reasonably necessary for treatment of the compensable injury. It expressly based this finding on the testimony of appellant's psychiatrist, Dr. Remmel. The Commission stated:

> Dr. Remmel assessed the claimant's increase[d] complaint relative to his low back as a progression of his *prior injury*. [Emphasis added.]

There are two problems with this finding. First, it is not factually correct. Dr. Remmel did not say that appellant's increased symptoms were in any way the result of his injury. Instead, Dr. Remmel said only that appellant's problem was most likely "a progression of *the disease process*." (Emphasis added.) The disparity between Dr. Remmel's undisputed actual statement and the Commission's finding regarding that statement is alone enough to require reversal. Administrative decisions may only be affirmed on the agency's findings and for the reason stated by the agency, even where there is evidence in the record that would support the agency's determination on a different basis. *See generally Al-Co Properties, Inc. v. Department of State*, 88 A.D.2d 88, 452 N.Y.S.2d 947 (N.Y. App. Div. 1982). Consequently, our function in reviewing workers' compensation cases is limited to determining whether the Commission's findings as to the existence or nonexistence of essential facts are or are not supported by the evidence. *See Clark v. Peabody Testing Service*, 265 Ark. 489, 579 S.W.2d 360 (1979); *Wright v. American Transportation*, 18 Ark. App. 18, 709 S.W.2d 107 (1986). Simply put, we do not make our own findings of fact in workers' compensation cases, or affirm on the ground that the Commission reached the right result for the wrong reason. *See Cook v. Alcoa*, 35 Ark. App. 16, 811 S.W.2d 329 (1991). Instead, we simply decide whether the facts found by the Commission are supported by the evidence, and whether those facts support the Commission's decision. Here, the

facts found by the Commission regarding Dr. Remmel's statement are not supported by the evidence.

Second, Dr. Remmel's actual statement does not support an award of benefits. Appellant was required to show that the treatment was reasonably necessary for his compensable injury, as opposed to his preexisting back disease. Dr. Remmel's statement that appellant's current condition is a progression of the disease process, without identifying what he meant by "disease," does nothing to resolve this crucial question. It is instructive to compare the situation presented in the present case to that in *Tuberville v. International Paper Co.*, 28 Ark. App. 196, 771 S.W.2d 805 (1989), *aff'd*, *International Paper Co. v. Tuberville*, 302 Ark. 22, 786 S.W.2d 830 (1990), which the Commission cited. In *Tuberville*, there was extensive and definite medical testimony to show that Mr. Tuberville's present condition was causally related to his compensable injury. This record in the present case contains no substantial evidence to support the existence of the necessary causal connection.

In the absence of such evidence, the majority can only arrive at its result by giving appellant the benefit of the doubt with respect to the question of causation. This is patently wrong. It is true that, at the time appellant sustained his compensable injury in 1983, the Commission did give the benefit of the doubt to claimants in making factual determinations. *See Brower Manufacturing Co. v. Willis*, 252 Ark. 755, 480 S.W.2d 950 (1972). However, this practice was eliminated by Act 10 of 1986, § 10, which provided that, "[i]n determining whether a party has met the burden of proof on an issue, administrative law judges and the Commission must weigh the evidence impartially and without giving the benefit of the doubt to either party."[2] This rule is applied retroactively to any case heard by an administrative law judge or the Commission after the effective date of the Act in June 1986, regardless of the date of the claimant's injury. *Wade v. Mr. C. Cavenaugh's*, 298 Ark. 363, 768 S.W.2d 521 (1989); *see also Marrable v. Southern LP Gas, Inc.*, 25 Ark. App. 1, 751 S.W.2d 15 (1988); *Fowler v. McHenry*, 22 Ark. App. 196, 737 S.W.2d 663

---

[2] Identical language was included in Act 796 of 1993 and is now codified at Ark. Code Ann. § 11-9-704(c)(4) (Supp. 2002).

(1987). The claim in this case was heard in 2001 and 2002, and appellant was therefore not entitled to the benefit of the doubt in this factual determination, even had it been properly made by the Commission instead of by this court.

The Commission erred in finding that Dr. Remmel attributed appellant's current condition to his compensable injury, and erred in basing its award of medical benefits on Dr. Remmel's opinion. We should reverse on that basis, and not compound the error by improperly making our own findings of fact and improperly giving appellant the benefit of the doubt in doing so.

I respectfully dissent.

