JOHN C. GEISLER et al., Petitioners, v DEPARTMENT OF STATE, Respondent.

Fourth Department, March 28, 1980

## APPEARANCES OF COUNSEL

*Harter, Secrest & Emery (Donald P. Berens, Jr., of counsel),* for petitioners.

*Robert Abrams, Attorney-General (Philip S. Glickman,* and *William J. Kogan* of counsel), for respondent.

## OPINION OF THE COURT

WITMER, J.

In this proceeding to review the determination of respondent Department of State, made on June 25, 1979, imposing sanctions on petitioners for alleged untrustworthiness and incompetence in their conduct as licensed real estate brokers we have examined the record to ascertain whether the determination is supported by substantial evidence *(300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 181) and we find that in some important respects it is not.

Petitioners are John C. Geisler, individually, and John C. Geisler Realty, Inc., a licensed real estate broker represented by John C. Geisler. In April, 1978 Mr. and Mrs. James L. Whitley gave an exclusive listing to petitioners for the sale of their residence premises at No. 16 Klafehn Drive, Town of Hilton, Monroe County. The keys to the property were placed in Geisler's possession; and the Whitleys moved to Texas. By July the property had not been sold; a mortgage payment was to become due on July 15 (a Saturday); and on July 1 the Whitleys asked Geisler to buy the property. John Geisler, individually, and his secretary, Sandra French, then offered to buy the property and they signed a purchase offer therefor on July 2, which the Whitleys promptly accepted the next day. The offer was subject to the mortgagee bank permitting the purchasers to assume the existing mortgage on the property, and it provided that the transaction be closed on July 17, 1978, a Monday. Mrs. Whitley testified that she asked Geisler whether he could complete the transfer by July 15 and he replied that he could. Time of closing was not specifically made of the essence, however, and the transaction was not closed on the 17th, nor indeed at any time.

While still in Texas, on July 26, 1978 Mrs. Whitley advised her attorney that she no longer wished to sell the property; and she had their attorney write to Geisler's attorney and advise that they deemed the contract null and void. On July 29 she and her husband returned to Rochester, and on the

30th she telephoned to Geisler's office and talked with Ms. French. She asked for the keys to the property, and testified that Ms. French told her that she could not have them because the property was under contract for sale to Geisler and French. The Whitleys then went to the property and forced their way in, and to their surprise they found that it was being occupied and that substantial changes had been made in it, including ripping out built-in beds and painting over some of the wallpaper. They then made complaint to respondent Secretary of State. They claim that as a result of Geisler's delay the bank was proceeding to foreclose its mortgage.

Geisler and Ms. French began an action against the Whitleys for specific performance of the contract of sale, which action is still pending. Respondent initiated a hearing against petitioners as to their trustworthiness and competence. At the hearing the above facts were elicited plus additional testimony in substance as follows:

Directly after the offer by Geisler and Ms. French to buy the property was accepted, Ms. French, unbeknown to Geisler, entered the property, occupied it in part and began to make alterations and "improvements" therein. What key she used to gain entrance does not appear but there is evidence that a neighbor had a key and that Geisler had a key in his office. Both Geisler and Ms. French denied that Geisler had knowledge before July 29, 1978 that she had entered the property or had made alterations therein. Upon learning of such actions by her, Geisler expressed surprise and reprimanded her for it, and he tried unsuccessfully to contact the Whitleys in Texas to notify them thereof, not knowing that they had just returned to Rochester. It appears that, even so, Geisler did not direct Ms. French to remove her personalty from the Whitley property, and that thereafter Ms. French continued to be employed as secretary in the Geisler office.

The record also shows that within about 10 days after the offer was accepted, Geisler made a telephone call to the mortgagee bank advising it of his contract to buy the property, along with Ms. French, and reference to that call was made in Geisler's letter to the bank dated July 18, 1978. Although Geisler testified that the bank officer had told him that the bank would accept their assumption of the mortgage, he added that on July 24 or 25 the bank notified him that the Geisler Realty Corporation would have to assume the mort-

gage or Geisler would have to submit his personal financial statement, to which Geisler agreed. Nevertheless, he submitted no such statement.

The hearing officer found that despite Geisler's knowledge that the transfer was to be completed by July 17, or at least as soon as possible thereafter, he made no attempt to contact the bank mortgagee promptly to expedite the transaction, and by the end of the month he still had made no progress in that respect. He also found that Geisler,

"pursuing his own self-interests, delayed contacting the bank until July 18, 1979 *[sic]*, and thereafter, continued to be dilatory in his efforts to assume the Whitleys' mortgage.

"As a licensed real estate broker purchasing property from his clients, John Geisler is held to a duty greater than that which is generally imposed on a buyer or seller. As a licensed real estate broker, he is a fiduciary for his clients and has an affirmative duty to look after the special interests of his clients. In the Whitleys' case, the special interest was for a speedy closing. Cognizant of that interest, John Geisler had an affirmative duty to make a diligent and good-faith effort to honor the July 15th closing date. Nonetheless, to his own benefit, John Geisler procrastinated and delayed, all to the detriment of the Whitleys. His defense, that he was acting in his personal capacity and not as a broker, is without merit."

The record supports such conclusion; and it must be confirmed (*Matter of Pell v Board of Educ.*, 34 NY2d 222; *Matter of Duncan & Hill Realty v Department of State of State of N. Y.*, 62 AD2d 690, app dsmd 45 NY2d 821). Geisler, as broker, stood in a fiduciary relationship with the Whitleys. The fact that he then undertook to buy the property individually did not divest him of his responsibility to the Whitleys to act in a trustworthy manner. He remained obligated to make a good faith attempt to have the transaction closed promptly, as he had assured the Whitleys would and could be done, to avoid embarrassment to them by a default on their mortgage and thus to avoid putting them in a worse position than they would have been in had they not agreed to sell to him. Under the circumstances Geisler was in control of the transaction, and he violated his duty as broker to the Whitleys by dragging his feet in his own interest (see *Matter of Grant Realty v Cuomo*, 58 AD2d 251, 255). We find that *Matter of Berry v Lomenzo* (39 AD2d 745), relied upon by respondent, is inappo-

site because there the salesman did not stand in a fiduciary relationship with the tenant.

The resulting delay in this case, however, turned out to be of minor consequence, because within a week or so the Whitleys had decided that they did not wish to sell and wanted to cancel the contract, and this was before they learned of the misconduct by Ms. French. Insofar as the sanction imposed by respondent rests solely on Geisler's conduct above described, it was excessive and thus arbitrary and capricious.

Respondent also rested its sanctions against petitioners upon its conclusion that Geisler had permitted Ms. French to enter the Whitley property and begin to remodel and redecorate it. If the record supported such findings, the determination should be confirmed in all respects. The hearing officer stated that he did not believe the testimony of Geisler and Ms. French that Geisler did not know of her entry into the property and her actions therein, and he also held Geisler responsible for permitting Ms. French to have the key to enter the property. Respondent's counsel acknowledged on the argument that such conclusions by respondent were not based upon facts in the record but upon the hearing officer's deductions from the relationship of employer and employee existing between Geisler and Ms. French, and the officer's attributing to Geisler constructive knowledge of Ms. French's acts. Although the record may well support a finding of constructive knowledge stemming from the employer-employee relationship, we conclude as a matter of law that Geisler can only be charged with acts with which he had actual knowledge.

Section 442-c of the Real Property Law provides in part that "No violation of a provision of this article by a real estate salesman or other employee of a real estate broker shall be deemed to be cause for the revocation or suspension of the license of the broker, unless it shall appear that the broker had actual knowledge of such violation".

Although there may be basis for suspicion and speculation that Geisler knew what Ms. French was doing, the record is barren of any evidence that he knew. Also, although it is clear that Ms. French used a key to enter the Whitley property, there is no evidence that Geisler gave it to her, that he was negligent in the way that he kept the key in the office or that he knew that she was using it to enter the property. There is evidence that a neighbor had a key. The record does not show any dereliction of duty on Geisler's part with respect to the

key. Thus, if section 442-c has any application here, it forms no basis for support of the determination, because of the lack of evidence that Geisler had actual knowledge of Ms. French's misconduct (see *Matter of Kunst v Department of State of State of N. Y.,* 41 AD2d 686; *Smith v Lomenzo,* 33 AD2d 874; cf. *Matter of Diona v Lomenzo,* 26 AD2d 473, and see, 1928 Opns Atty Gen 134, 137).

Concerning the alleged misconduct of Geisler with respect to his custody of the key to the Whitley property, and Ms. French's entry of the property and her acts therein, the record lacks the required substantial evidence to support the charge. "[S]ubstantial evidence does not rise from bare surmise, conjecture, speculation or rumor" *(300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 180), "and allowance may not be made for information outside of it [the record]" *(id.,* p 181). "[S]ubstantial evidence consists of proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably—probatively and logically" *(id.,* p 181).

Because section 442-c of the Real Property Law protects Geisler from suspension for acts of an employee of which he had no knowledge, and the record discloses no act of untrustworthiness by Geisler in connection with the occupation of the Whitley property, respondent erred in finding Geisler untrustworthy and incompetent for such reason under section 441-c of that law. Such finding should, therefore, be vacated.

We conclude, therefore, that the determination by respondent should be modified by vacating the finding that petitioners were untrustworthy and incompetent as brokers in connection with the entry and occupation of the Whitleys' house by Ms. French. We find no merit, however, in the other contentions by petitioners; and the other findings by respondent should be confirmed.

In view of our vacating respondent's principal finding of misconduct by Geisler, and because the Whitleys had changed their minds about selling the property before the expiration of a reasonable time for the closing of the transfer of the property to Geisler and Ms. French, thus resulting in a minimal wrong to the Whitleys and a less serious violation of duty than found by the respondent, we conclude that the

sanction imposed upon petitioners should be reduced to that of censure.

SIMONS, J. P., HANCOCK, JR., CALLAHAN and MOULE, JJ., concur.

Determination unanimously modified and, as modified, confirmed, without costs, in accordance with opinion by WITMER, J.