In the Matter of Roberts Real Estate, Inc., et al., Petitioners, v New York State Department of State, Division of Licensing Services, Respondent.

Third Department, October 31, 1991

### APPEARANCES OF COUNSEL

*Carter, Conboy, Bardwell, Case, Blackmore & Napierski (Susanna L. Martin* of counsel), for petitioners.

*Robert Abrams, Attorney-General (John McConnell* and *Peter G. Crary* of counsel), for respondent.

*Michael T. Wallander* for New York State Association of Realtors, *amicus curiae.*

### OPINION OF THE COURT

MIKOLL, J.

Respondent charged petitioners with failure to supervise the real estate business of petitioner Roberts Real Estate, Inc. (hereinafter Roberts, Inc.) or the sales activities of Lucia DeDe and Karen Curren. Petitioners were also charged with untrustworthiness and incompetence under Real Property Law § 441-c (1) for failing to disclose to various purchasers of land in a development in the Town of New Scotland, Albany County, that their water supply was possibly contaminated with methane gas.

The charges arose as a consequence of the alleged misconduct of Curren in failing to inform two sets of purchasers of property of the possible presence of methane gas in the water supply to their homes. Curren, a licensed real estate sales agent for Roberts, Inc., was listing agent for the development. Roberts, Inc., a licensed real estate brokerage firm, contracted with Basil Development Corporation, the builder and vendor of the development, to market the homes. DeDe, an associate broker, was the sales manager in charge of overseeing salespeople in the office where petitioner David Newell served as branch manager and out of where Curren worked. Newell, together with petitioner Hugh Roberts, served as representative real estate brokers for Roberts, Inc.

The developer had secured approval of the water system for the development from the Albany County Health Department contingent only upon satisfactory quality and quantity tests for the individual wells. A number of homes were built and sold for which the county issued certificates of occupancy after

testing the quality of water of the wells serving each house. The Health Department did not test for the presence of methane.

Thereafter, homeowners in the development complained of methane and other chemicals in the water supply. Respondent then commenced the disciplinary proceeding at issue in this case against petitioners. Testimony at the ensuing hearing revealed that one set of purchasers contracted to purchase their home on April 13, 1986 and closed on September 24, 1986. In November 1986, when Curren was in their home, they showed her a sample of their tap water which fizzed and was cloudy when drawn. Curren informed them that it was methane gas. The testimony indicated that by mid-September 1986, Joe Thorpe, a Roberts, Inc. salesperson, was advised by a property owner that there was methane in the tap water of her home located in the development. Also, Debbie Wilson, another sales agent, was informed a few days after September 19, 1986 by another homeowner in the development that the water supply in that home was contaminated with methane. A letter dated November 25, 1986 to Curren requested that another homeowner's water be tested for methane.

Curren claimed that information regarding methane first came to her attention on October 31, 1986 and that she informed DeDe and a Basil representative thereof. She contacted the County in November 1986 and January 1987 to look into the possibility of methane in the water supply. She desisted thereafter from pursuing the matter on Basil's orders. In November 1986 she also made an inquiry of an engineering firm and was advised that methane was not harmful to drink but could be explosive.

DeDe acknowledged that Curren informed her in November 1986 of the possibility of methane in the water supply of the development. She did not give Curren any instructions as to how to proceed. She informed Newell thereof in December 1986. Newell gave no instructions to either Curren or DeDe in light of the disclosures.

After the hearing an Administrative Law Judge (hereinafter ALJ) found that Curren demonstrated untrustworthiness and incompetence under Real Property Law § 441-c (1), by failing to disclose to certain purchasers that their water supply might contain methane which was found to be a latent defect, and that Roberts, Inc. demonstrated untrustworthiness and incompetence in that it knew or should have known of the potential

presence of methane gas as of September 21, 1986, by way of information gathered by Thorpe, and that such knowledge was to be imputed on agency principles to Roberts, Inc. The ALJ also found that Roberts, Inc., Roberts and Newell demonstrated incompetence in that they failed to supervise and manage the business of the office or the activities of DeDe and Curren as required by 19 NYCRR 175.20, but that the evidence against Roberts and Newell was insufficient to establish that they failed to disclose a material fact of which they were aware to prospective purchasers. Finally, the ALJ concluded that the evidence failed to support the allegation that Roberts, Newell and DeDe, as managers of Roberts, Inc., allowed the sales to go forward after they became aware of the problems with the water supply. Nevertheless, the ALJ ruled that the licenses of Roberts, Inc., Roberts, Newell and Curren should be suspended for three months or, in lieu thereof, that a fine be imposed. All other charges were dismissed. The Secretary of State concurred and Roberts, Inc., Roberts and Newell commenced this CPLR article 78 proceeding to annul the determination.*

In order to sustain the determination, there must be substantial evidence in the record to support it *(see, 300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d 176, 179-181).

This proceeding brings on for our review an issue of first impression in this court, that is, can Roberts, Inc. be held in violation of Real Property Law § 441-c in the absence of proof of actual knowledge of the reports of methane gas. The ALJ found Roberts, Inc. in violation of Real Property Law § 441-c (1) by imputing to it, as the corporate broker, Curren's knowledge of the possible presence of methane gas and the information gained by other sales agents to the same effect.

Real Property Law § 441-c (1) provides: "The department of state may revoke the license of a real estate broker or salesman or suspend the same * * * if such licensee * * * has demonstrated untrustworthiness or incompetency to act as a real estate broker or salesman". Real Property Law § 442-c provides: "No violation of a provision of this article by a real estate salesman or employee of a real estate broker shall be deemed to be cause for the revocation or suspension of the license of the broker, unless it shall appear that the broker had actual knowledge of such violation or retains the benefits,

---

* Curren did not petition for review.

profits or proceeds of a transaction wrongfully negotiated by his salesman or employee after notice of the salesman's or employee's misconduct."

The applicable statutes require that Roberts, Inc., the corporate broker, have actual knowledge of Curren's violation *(see,* Real Property Law § 442-c). Where, as here, the corporate broker's own individual managing real estate brokers were found not to have had actual knowledge of the wrongdoing, we hold that knowledge to the corporate broker cannot be imputed *(see, Matter of Sperte v Shaffer,* 111 AD2d 856, 857; *Geisler v Department of State,* 73 AD2d 392; *Smith v Lomenzo,* 33 AD2d 874). Case law indicates that such a rule prevails in the real estate broker-salesperson relationship *(see, Matter of Realty World/Realty World Franchise Serv. Corp. v Shaffer,* 101 AD2d 708). Similarly, it has been held that when a real estate broker of a corporate real estate broker is found to have knowledge of a salesperson's misconduct and is subject to discipline, the corporate real estate broker is also subject to discipline *(see, Matter of Sperte v Shaffer, supra,* at 857-858). Here, however, Newell and Roberts were found not to have personal knowledge of the alleged wrongdoing. We thus conclude that Roberts, Inc., as the corporate real estate broker, was consequently also not in violation of Real Property Law § 441-c (1).

Regarding the finding that Roberts, Inc., Roberts and Newell failed to supervise and manage the business of the office or the activities of DeDe and Curren as required by 19 NYCRR 175.20, there is substantial evidence in the record to support such conclusion. Neither Curren nor DeDe received guidance or instructions from Roberts and Newell about reports of methane in the water. As early as October 1986, the Health Department received requests for methane testing. Newell was briefed about the problem in December 1986. The contamination was a serious problem which carried with it serious safety consequences. Methane can be explosive and may require venting. The brokers' failure to address the matter, leaving any action to the uninstructed sales agent Curren, constituted untrustworthiness and incompetency and failure to meet their duty to supervise sales personnel *(see, Matter of Friedman v Paterson,* 89 AD2d 701, 702, *affd* 58 NY2d 727). Accordingly, in view of our decision, the matter will have to be remitted for reconsideration of an appropriate penalty.

Weiss, J. P., Yesawich, Jr., Mercure and Crew III, JJ., concur.

Adjudged that the determination is modified, without costs, by annulling so much thereof as found petitioner Roberts Real Estate, Inc. guilty of untrustworthiness and incompetence for failing to make certain disclosures; matter remitted to respondent for further proceedings not inconsistent with this court's decision; and, as so modified, confirmed.